GILMER, J.
In the year 1815, John Snyder of the county of Hampshire died, leaving a will by which he directed (among other things), that all His estate in Virginia, real and personal, should be sold; and he bequeathed one-fifth part of the proceeds thereof to his daughter Elizabeth. The executors of the said John Snyder sold a portion of his lands to one Okey Johnson, and a balance of the purchase money remained unpaid in 1835. After the death of said testator, his daughter Elizabeth intermarried with Jonathan Carlisle, and on *the 6th of April, 1835, the said Carlisle made an assignment of his interest, in the balance due from the said Okey Johnson, (derived through his wife Elizabeth,) to John Sherrard, by writing under his hand and seal. “This assignment was made to John Sherrard for the benefit of Angus W. McDonald, for the sum of $150.’’
In August, 1835, the said Elizabeth Car-lisle commenced proceedings against her husband for a divorce in the Court of Common Pleas of Bedford county, Pennsylvania, and in 1836, the said court in Pennsylvania decreed a divorce between the said Elizabeth and Jonathan, from bed and board, and from the bond of matrimony.
In September, 1837, there was pending a suit in the Circuit Superior Court of Hampshire county, by Samuel Cockerell against Okey Johnson and others, to which Jonathan Carlisle and Elizabeth, his wife, were parties defendant, involving the right of Elizabeth Carlisle to certain property under the will of her father John Snyder, and the said Elizabeth Carlisle filed a petition in the said court, setting forth her marriage to the said Jonathan Carlisle and the divorce above mentioned.
The sole object of her petition was to obtain a decree, settling upon her any amount to which she might be found entitled, by the result of the said suit, under the will of her father.
Sometime in the year 1842 or 1843, Jonathan Carlisle died, and in 1848 the said Elizabeth, his widow, died also. A short time previous to the death of the said Elizabeth, an order was made by the Circuit Court of Hampshire, directing a commissioner to take an account, and to report what would be a reasonable settlement to be made on her, out of her interest in her father’s estate involved in the said suit; and in August, 1848, (the said Elizabeth being still living,) the commissioner made a report, from which it appears that her said interest, amounted in all to the sum of $422 44: *and the commissioner reported that this sum would not be an adequate settlement on her. The said Elizabeth Carlisle left a certain John S. Carlisle surviving her, who was her only son and heir, and who soon after her death, *457 took out letters of administration on her estate. In 1849, after the death of the said Elizabeth, and after the qualification of the said John S. Carlisle as her administrator, he filed in the Circuit Superior Court of Eaw and Chancery for Hampshire, a supplemental bill, in which he sets forth the proceedings under the petition of the said Elizabeth, his mother; and prays that the fund ascertained by the report of the commissioner, to be under the control of the court, may be decreed to him, as the only child and sole distributee of the said Elizabeth. McDonald and the representatives of Sherrard and of Jonathan Carlisle, are made defendants. Process was duly executed, and the bill taken for confessed as to all of them; and the cause coming on to be heard, the Judge of the Circuit Court — over-ruling some exceptions taken to the commissioner’s report — confirmed it, and decreed to John S. Carlisle the sum of $422 44, ascertained to be due the said Elizabeth Carlisle. Prom this decree, the representatives of John Sherrard and Angus W. McDonald appealed; and the question to be decided is, whether the appellants (claiming under the purchase and assignment aforesaid from Jonathan Carlisle), or the said John S. Carlisle is entitled to the said sum of money.
The first objection of the appellants is to the jurisdiction of the Court of Common Pleas of Bedford county, Pennsylvania, in decreeing the divorce aforesaid; because (as is alleged), the parties at the time were domiciled in Virginia. It is sufficient to say, in answer to this objection, that there is no proof in the record to sustain it, and indeed, in the view that I take of this case, the validity of the divorce is wholly immaterial. Several objections are made to the regularity of the proceedings, and in some respects they are certainly not very regular; but no objection of this kind was made in *the court below — no objection was made to the reception of the petition — no demurrer filed to the supplemental bill; on the contrary, (as before stated,) it was regularly taken for confessed as to all the parties; and even if it were not too late to make the objection now for the first time, in this court, I find it laid down in many of the books, that the proper mode of proceeding in such case by the children, is by supplemental bill. 1 Dan’l Chy. Pr., 138-9, and cases cited; Murray v. Lord Elibank, 10 Ves., jr. 84; 13 Vesey, 1 S. C. ; 14 Vesey, 496, S. C.
It appears from the record, that the sum of money in controversy, so far from being reduced into possession, either by the said Jonathan Carlisle or his assignee, was a subject of litigation, and under the exclusive control of a Court of Equity, from the time when it became due, to the date of the decree in the Circuit Court.
The executors of John Snyder, sold a portion of the land of their testator to Okey Johnson. They have never collected, to this day, the money, and the first account we have of it, it is involved in Cockerell’s suit in equity. So that it was literally a chose in action of the wife, which the husband or his assignee could not reduce into possession without the aid of a Court of Equity. The said husband had received some 5 or $6,000 by virtue of his marital rights; and it seems that the small sum of $422, is all that was left of her patrimony. She comes before the Court of Equity, which has control of the money, and by her petition asserts her right to a settlement. What difference does it make whether she asserts it by petition or by bill? In England it has been over and over again decided, that under such circumstances as exist here, neither the husband nor his assignee shall be allowed, through the aid of a Court of Equity, to get possession of the wife’s choses in action, until an en-quiry is made to ascertain whether a suitable settlement has been made on her and her children; and if it hás *not been, the court will see that it is made. This doctrine seems to have been fully recognized in Browning v. Headley, 2 Rob. 340, 341; and if the court, of its own mere motion, would do this, much more should it do so in a case like the present. If it be conceded that the wife has an equity to a settlement, and the court is judicially informed of it, is it not its duty to protect her rights against the claim of the husband or his assignee?
But it is objected, that even if the wife were entitled to a settlement, it is a right personal to her, and that her son, John S. Carlisle, is not entitled to it. I understand a settlement of this kind to be one, properly, for the wife and her children; and if she claims it, and a decree is made in her favor, her children after her death are entitled to the benefit of that decree. 1st vol. Heading Cases in Equity, (White and Tudor, Hare and Wallace’s notes, edition of 1852,) p. 357, (marginal 292,) Murray v. Elibank, and the cases there collected.
We are told by Eord Eldon, that “this doctrine of the wife’s equity to a settlement, is a mere creature of the court, and founded altogether in its practice. ” Murray v. Elibank, reported in the above named book, at p. 360, (marg. 297). And in the same case next reported in the same volume, p. 362, (marg. 300,) Sir William Grant uses almost exactly the same language. There is much conflict among the English decisions, as to what that practice is in some particulars ; but I have not found any case, in which it has been decided, that -when the wife comes before the court asserting her claim, and an account is directed to ascertain what amount should be settled upon her, and she dies, her children are not entitled to the benefit of that decree. The principal cases already referred to, (in White and Tudor,) are direct authorities in favor of the children, and the more recent decisions are collected in the same work, from pages 373 to 378, (marginal 313 to 319,) vol. 1.
Eor the reasons above stated, (without expressing an opinion on any other *458 point; and on the ground alone'*that the wife was entitled to the money in controversy by way of provision, and had on her petition obtained a decree directing an account for a settlement,) I think John S. Carlisle, her only son and, distributee, had a right by supplemental bill to recover it. I am for affirming the decree with costs.
TYEER, J.
A suit was pending in 1837 in the Circuit Superior Court of Eaw and Chancery for the county of Hampshire, in which Jonathan Carlisle, and his wife Elizabeth, et als., were parties, involving the rights and interests of the wife relative to money, &c., to which the wife was”entitled under her father’s will; and on the 14th of September, in that year, the wife filed her petition in said suit, alleging that she had been divorced from the bond of matrimony, by a decree of the Court of Common Pleas for the county of Bedford, in the State of Pennsylvania, and praying the court to decree to her, as feme sole, such money, &c., as she would have been entitled to, if she had never been married. Process was issued against the husband and his assignee, to answer the petition; the husband having, on the 6th of April, 1835, assigned his interest in the fund in court to John Sherrard, for the benefit of Angus McDonald. In his assignment he states, that his interest, such as it is, is derived through his wife, as . one of the children and distributees of John Snyder. In May, 1847, after the death of the husband, the court made an order, without objection, directing an enquiry before a commissioner, as to what would be a reasonable provision for the petitioner out of the fund in court, taking into consideration the amount received through-her husband. We have here, then, a suit in a court of equity, in which the wife’s property is under the jurisdiction of the court, and in such a manner as to require a decree or order of the court to put the party rightfully entitled to it in possession of it. All the parties interested in the fund are before the court; and it is the indisputable rule of the court, that, under such circumstances, it will not ^'deliver the fund over, except on the terms that a settlement . shall be made on the wife. In a case such as this, an objection is raised in the appellate court, for the first time, to the form of the petition, in this, that it does not pray the specific relief which was ultimately granted by the court. Where all parties interested in a fund of this description are before the court, as in this case, I think that, on the motion of the wife, it would not only be in the power of the court, but it would be its duty, to order an enquiry, such as was ordered in this case, and to act on the report made pursuant thereto. There can be nothing, then, in the objection to the form of the proceeding by which this question was brought to the notice of the court, and acted on by it; and I think there is-no question as to the power and duty of the court to recognize the wife’s equitable claim to a settlement. The case made by the petition is, that of a husband and wife living separate and apart, by reason of a divorce, obtained at her instance, from the bond of matrimony; and whether that divorce was void or not, is wholly immaterial to this controversy. That fact alone, that the wife was not supported by the husband, without contradiction or explanation, was all-sufficient to induce a court of equity to make provision for the wife out of the fund in court. No just objection can, therefore, be opposed to the claim of the wife to her equity by way of settlement, as against the husband.
But it is said, that the divorce, if valid, could not avoid a previous assignment, made by the husband for valuable consideration, of his wife’s interest in this personal subject. That may be true or not; but, for the purposes of this suit, it is unnecessary to decide, whether the wife would take the fund by survivorship. For, although “dicta” may be found, that an assignee of the husband, for valuable consideration, takes a chose in action of the wife, freed from her contingent right of survivorship; I am not aware of any decision, or even of any “dictum” that he takes it discharged of the wife’s equity to a settlement. That he does not, is decided in *Browning v. Headley, 2 Rob. 340, and recognized in Dold’s trustee v. Geiger’s adm’r, 2 Grat. 98-112. While questions may therefore arise in other cases, as to the character and description of property out of which the wife can claim her equity to a settlement, and as to the amount to be settledoin the case of creditors, I think no question of that sort arises in this case. The husband was dead when the order of reference in this case was made, and there remained in the hands of the court a little over $400, the remnant of some $700, all of which, except this remnant, had been received by the husband. The whole fund, therefore, was but a mere pittance in the way of a provision.
If I am correct in the foregoing views, the only remaining question is, did the wife’s equity attach to the fund for the benefit of her child? and of this, looking to the facts and circumstances of the case, and the proceedings in the suit, I entertain no doubt. In Lloyd v. Mason, 5 Hare, 149, Sir J. Wigram (V. C.) says: “The question whether the children can, after the death of the mother, Insist on her equity to a settlement, depends on the question whether the father is bound; and it is clear that an order referring to a master to approve a settlement, binds the father.” In this case, the order was made after the death of the husband, and before the death of the wife, and the son claimed by supplemental bill the fund in court. It is the object of the courts, in all cases of provision for the wife, to include the children. As the fund in court was too small for the assignee to take subject to conditions, I am of opinion that the court below properly decreed *459 the whole fund to be paid over to the appel-lee. I am, therefore, for affirming the decree with costs.